T.C. Memo. 1997-10


UNITED STATES TAX COURT


MARSHALL I. GORDON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4489-94.                    Filed January 7, 1997.


Nathan M. Sutton, Janice S. Martin, Lyle D. Pishny, for petitioner.

Charles M. Berlau, for respondent.


MEMORANDUM OPINION

RAUM, Judge:  The Commissioner determined a $243,216 deficiency in petitioner's 1988 Federal income tax and a $60,804 section 6661(a) addition to tax for substantial understatement. The issues are:  (1) Whether petitioner (petitioner or Marshall) realized capital gain on the transfer of a 22.5-percent interest

in Blackbob, a Kansas property, and (2) whether he is liable for a section 6661(a) addition to tax. The facts have been stipulated. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Marshall I. Gordon, petitioner, resided in Overland Park, Kansas, when the petition in this case was filed. Petitioner and his sister, Suzanne Aron (Suzanne), were in dispute over the estate of their late father, Milton Gordon, and assets owned by Gordon Realty Company, Inc. (Gordon Realty). They agreed to submit all of their differences to binding arbitration.

Gordon Realty owned an undivided 5/6 interest (83.333%) in Blackbob, a plot of land located at 135th and Blackbob, Johnson County, Kansas (Blackbob). Of the 900 shares of common stock outstanding in Gordon Realty, petitioner owned 486 shares, Suzanne owned 269 shares, and their respective children owned the remaining shares. Pursuant to a plan of liquidation under which it was required to distribute all of its property and assets, Gordon Realty conveyed to petitioner, Suzanne, and their respective children undivided proportionate ownership interests in real estate (including Blackbob) of 45.001 percent, 24.907 percent, and 13.425 percent, respectively. The remaining 1/6 interest (16.667%) in Blackbob was owned by Milton Gordon,

deceased.  On December 29, 1987, pursuant to a Journal Entry of Final Settlement, 60 percent of that 1/6 interest was conveyed to petitioner personally or for his benefit, and 40 percent to Suzanne personally or for her benefit.

In December 1986, petitioner's wife, Elaine Gordon (Elaine), filed for divorce.  In a Memorandum Decision of March 13, 1987, the divorce court ruled that Elaine and her husband, Marshall, were "deemed to own 45% of [Blackbob]", one-half of which (22.5 percent) was allocated to Elaine.  The court ordered Marshall "to obtain a deed from Gordon Realty to Mrs. Gordon, conveying to her a 22.5% interest in the tract."  When he failed to deliver the deed, Elaine filed a "Motion to Compel Defendant, Gordon Realty Company, Inc., and Defendant, Gordon Financial Corporation, to Transfer Real and Personal Property".

On October 9, 1987, petitioner and Elaine met before the district court judge and announced that they had reached a compromise.  Elaine would receive $800,000 for her share of Blackbob, "conditioned upon the * * * execution of the agreement between Marshall Gordon and Suzanne Aron as set forth in the arbitor's [sic] award."  The parties agreed to "formally prepare a separation agreement and submit it to the Court for its approval at a later date."

In February 1988, the arbitration between petitioner and Suzanne formally ended.  An award was entered requiring that the ownership of all assets of the Estate of Milton Gordon and Gordon

Realty be adjusted. Petitioner would be the owner of all the interests held by the Estate of Milton Gordon and all interests distributed by Gordon Realty in all of the property except Blackbob, and Suzanne would be the sole owner of Blackbob. As part thereof, she was to pay petitioner the sum of $1,386,002.30.

In July 1988, petitioner, Suzanne, and Elaine entered into an "Exchange Agreement", under which they would transfer Blackbob and other properties. This agreement provided:

> At closing each of the parties shall deliver their respective deeds, conveyances or releases and any funds payable hereunder to Company [title company] with instructions to record the documents in accordance with the terms and provisions above set forth at such time as Company is in position to record same and has funds available to it for distribution to those parties entitled to payment hereunder, it being understood that the payment to Third Party [Elaine] shall be made out of the funds payable hereunder by Second Party [Suzanne] to First Party [Marshall], and that such payment shall be deemed as a payment made by First Party to Third Party.

The property exchange took place on September 7, 1988. Elaine executed a quitclaim deed transferring her interest in the Blackbob property to petitioner. The deed was entered into the transfer record on September 8, 1988. Petitioner's children delivered their deeds to their interests in Blackbob to petitioner. Petitioner conveyed by deed to Suzanne his interest in Blackbob, the interest formerly allocated to Elaine, and the interests held by his children. Suzanne delivered $1,386,002.30 to the title company. The title company disbursed $800,000 as

"Payment to Elaine Gordon for Release of Judgment", $99,847.39 to petitioner's children, and $484,658.91 to petitioner.

On September 8, 1988, Elaine filed a "Release and Satisfaction of Judgment" with the district court. Bearing a face date of September 7, 1988, this document provided:

    1. The petitioner [Elaine] and respondent [Marshall] entered into a Separation Agreement and under the terms thereof * * * petitioner shall receive $800,000 in cash secured by an equitable interest in the real property located at 135th Blackbob, Johnson County, Kansas; and

    2. Respondent has paid to the petitioner the sum of $800,000; and,

    3. The judgment herein entered for the petitioner in the amount of $800,000 against the respondent should be released and fully satisfied and the petitioner's interest in the real property located at 135th and Blackbob, Johnson County, Kansas, should be released.

On September 28, 1988, 3 weeks after the exchange took place, petitioner and Elaine filed the Separation Agreement. Under the terms of the agreement, Elaine was given, as her personal property, "$800,000 in cash or other good negotiable instrument, secured by equitable interest on the real property located at 135th and Blackbob, Johnson County, Kansas." This provision was initialed by petitioner on July 22, 1988, and by Elaine on September 2, 1988. The first page states that the agreement was made and entered into on October 9, 1987. However, the certification by the clerk of the district court attests that the original document was filed on September 28, 1988. The

Journal Entry approving the Property Settlement Agreement was filed on September 7, 1988.

On his 1988 income tax return, petitioner, as stipulated by the parties, reported long-term capital gain of $486,002 (rounded to the nearest dollar) with respect to the Blackbob exchange. In the statutory notice of deficiency, the Commissioner determined that petitioner received unreported long-term capital gain of $900,000 (the difference between the $1,386,002.30 cash paid by Suzanne and the $486,002.30 reported by petitioner). Upon petitioner's showing that he paid $100,000 for his children's ownership interests in Blackbob,[1] which he transferred to Suzanne, respondent has since conceded $100,000 of the $900,000 long-term capital gain ascribed to petitioner.[2]

The Commissioner and petitioner agree that an exchange of interests occurred between petitioner, Suzanne, and Elaine. They both agree that Elaine conveyed by deed her interest in Blackbob to petitioner, which he subsequently transferred to his sister. They agree that Suzanne provided $800,000, which was deemed a

---

[1] Actually, the title company paid only $99,847.39 instead of $100,000 on petitioner's behalf to his children, but nothing here appears to turn upon the comparatively minor difference. Perhaps it represents part of the title company's fee for its participation as escrow agent.

[2] The parties have stipulated with respect to a number of issues not in controversy now, and the Commissioner has conceded that petitioner is not liable for the section 6661(a) addition to tax with respect to the items involved in the foregoing settled issues.

payment by petitioner to Elaine.  However, they place different interpretations upon these events.  The Government contends that petitioner was the owner of the disputed 22.5 percent interest in Blackbob and, as such, should be taxed on the $800,000 portion of the cash supplied by Suzanne that was allocable to him. Petitioner argues that, at the time of the exchange, although he acted as a conduit between Suzanne and Elaine, Elaine was the owner of 22.5 percent of Blackbob and, as the seller of that 22.5-percent interest to Suzanne, should bear whatever the applicable tax burden might be.

After the estate of his father was settled, petitioner received 45 percent of Blackbob from Gordon Realty.  The divorce court allocated 22.5 percent of Blackbob, half of that 45-percent interest, to Elaine.  At the same time, petitioner and Suzanne were having their interests in their father's estate and Gordon Realty arbitrated.  The arbitration resulted in Suzanne's getting all of Blackbob in exchange for $1,386,002.30.

The results of the divorce decree and the arbitration award were mutually inconsistent, with 22.5 percent of Blackbob awarded to Elaine by the divorce court, and, about a year later, 100 percent to Suzanne in the entirely separate arbitration proceedings.  Petitioner, Elaine, and Suzanne resolved the inconsistency by having Elaine yield her 22.5-percent interest in Blackbob and accept $800,000, instead.  Elaine consented to this

in a 3-way agreement, and the parties exchanged their interests using a title company as an escrow.

Suzanne placed $1,386,002.30 in the escrow account. Petitioner purchased the interests of his children in Blackbob for $100,000. The children transferred their interest to him, and he, in turn, transferred that interest over to Suzanne. The $100,000 payable by petitioner to his children was paid to them on his behalf by the title company out of the $1,386,002.30 supplied by Suzanne.[3] As indicated above, the Government has acknowledged petitioner's acquisition of his children's ownership interest in Blackbob and conceded that $100,000 of the adjustment.

As we view this case, the controversy should be decided on the basis of the substance of the matters affecting petitioner, Elaine, and Suzanne. In substance, Elaine was the true owner of 22.5 percent of Blackbob, and she in effect sold that interest to Suzanne, using petitioner as a conduit to enable him to transfer it to Suzanne along with his own 22.5 percent plus that which he acquired from his children, thus enabling Suzanne to become the sole owner of Blackbob.[4]

To summarize:

---

[3] See supra note 1.

[4] To be sure, some portion of Blackbob was owned by Suzanne's children, but no question has been raised with respect thereto, presumably because Suzanne acquired her children's interest or was otherwise content to treat it as her own.

1.  Petitioner's children transferred their interest in Blackbob for $100,000.

2.  Petitioner acquired Elaine's 22.5-percent interest as a conduit to complete the sale to Suzanne.

3.  Petitioner transferred to Suzanne his children's interest, his own 22.5-percent interest, and the 22.5-percent interest which he had simultaneously reacquired for that purpose from Elaine.

4.  Petitioner did not in substance sell anything to Elaine, and did not realize any gain on the transaction with Elaine.

---

Contrary to the Government's argument, we find that Elaine, not petitioner, was the owner of the disputed 22.5-percent interest in Blackbob immediately prior to the tripartite exchange. The Government relies on the Separation Agreement, which changed Elaine's interest from the right to ownership of 22.5 percent of Blackbob to "$800,000 in cash or other good negotiable instrument, secured by equitable interest on [Blackbob]." The Government states in its reply brief that the "Separation Agreement was made and entered into, and executed by petitioner and Elaine Gordon on October 9, 1987." Based on the execution of the Separation Agreement on October 9, 1987, the Government contends that at the time the exchange occurred, Elaine no longer had an ownership interest in Blackbob; she held

only an equitable interest.  See <u>Hill v. Hill</u>, 185 Kan. 389, 345 P.2d 1015, 1023 (1959).

The flaw in that argument is the contention that the Separation Agreement was executed on October 9, 1987.  On that date, petitioner and Elaine merely announced that they had reached a potential compromise; they did not file anything with the court.  In fact, petitioner and Elaine initialed the Separation Agreement in the sections describing the equitable interest as late as July 22, 1988, and September 2, 1988.  The exchange actually occurred thereafter, on September 7, 1988. Finally, the Separation Agreement was not filed until September 28, 1988, a fact to which the Government has stipulated.  At the time immediately prior to the exchange, Elaine still held an ownership interest.

The Government makes an extended argument based upon Kansas law and differences between warranty deeds and quitclaim deeds. Of course, Kansas law is controlling as to the technicalities of title relating to the property.  But such niceties in local law (cf. <u>Helvering v. Hallock</u>, 309 U.S. 106, 114 (1940)) do not detract from the substance of the transaction as we view this record.

We hold that petitioner did not realize any $800,000 capital gain with respect to the transaction before us.  Since there is no deficiency with respect to this $800,000, petitioner is not

liable for any section 6661(a) substantial understatement

addition in connection with this item.

<u>Decision will be entered</u>

<u>under Rule 155</u>.